AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Seth Schlessinger)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 18-1156-M |
| Ric Crossfield, Jr. | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/9/17 - 7/18/18__ in the county of __Bucks__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(g) | Engaging in Child Exploitation Enterprise. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel J. Johns, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/18/2018

_____
Judge's signature

City and state: Philadelphia, Pennsylvania

Hon. Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel J. Johns, being first duly sworn, hereby depose and state as follows:

1. I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) in Philadelphia, Pennsylvania. I am thus a "federal law enforcement officer," as defined by the Federal Rules of Criminal Procedure. I have been employed as a Special Agent since March 2007. I am presently assigned to the Philadelphia Division's Crimes Against Children squad, which investigates sex trafficking of children and prostitution investigations, child pornography, and kidnappings, among other violations of federal law. I have gained experience through training at the FBI Academy, various conferences involving crimes against children, and everyday work related to conducting these types of investigations.

2. This affidavit is being made in support of the issuance of the attached criminal complaint charging RIC CROSSFIELD, Jr. ("CROSSFIELD") with engaging in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g).

3. The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause in support of issuance of the attached complaint, I have not included each and every fact known to me concerning this investigation, but rather only those facts that I respectfully submit are necessary in order to establish probable cause.

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 2252A(g) prohibits any person from engaging in a child exploitation enterprise. In turn, Title 18, United States Code, Section 2252A(g)(2)

1

provides that a person engages in a child exploitation enterprise within the meaning of the section if the person violates (among other portions of Title 18) Chapter 110 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons. Chapter 110 of the United States Code prohibits, among other offenses, the production of child pornography (18 U.S.C. § 2251(a)); the advertisement of child pornography (18 U.S.C. § 2251(d)); the distribution or receipt of child pornography (18 U.S.C. § 2252(a)(2)); and the possession of child pornography (18 U.S.C. § 2252(a)(4)(B)). Each of the aforementioned violations is a felony offense.

## PROBABLE CAUSE

5. On or about May 23, 2017, an FBI online covert employee (OCE) was investigating the production of child pornography on the mobile app "live.me"[1] and browsed to a website called "8ch.net." On 8ch.net, the OCE observed a link to an URL permitting browser-based access to Service A, a computer-based communication service described further below. Next to the link was an image that depicted two females who appeared to be children wearing bikinis.

6. The OCE clicked on the above link and was re-directed to another URL to a website operated by Service A-2. This particular website was entitled "Service A-1" and the title was accompanied by a thumbnail image of two minor female children kissing each other.

---

[1] Live.me is a social media platform for sharing, creating and viewing live streaming videos. Live.me users can stream live video from mobile platforms like Apple iOS or Google Android. Videos streamed from Live.me users can be viewed through the Live.me mobile applications or an internet browser.

[2] Service A, Service A-1, and similar terms, as well as Username 1 and similar terms, are pseudonyms used in this affidavit in lieu of the actual terms in order to protect the integrity of an ongoing investigation.

7. Service A owns and operates a free-access all in one voice and text chat application and website with the same name that can be accessed over the web. A user creates a Service A account and can then communicate with other Service A users.

8. Service A users can exchange private messages between each other, participate in chat discussions, and voice chat. Service A users can also create chat rooms, which functions as message boards that can be accessed only by Service A users who have an invitation link. Service A-1, mentioned above, is one such chat room on Service A. Within these chat rooms, users can set up different sub-rooms wherein users can type written text, including links to files stored on external file-storage sites, and also upload files under a particular size limit, which can be viewed by all users of the sub-room. Service A users can share files larger than the limit allowed by providing hyperlinks to file sharing websites. Service A chat rooms can have one or more moderators. Moderators have the ability to manage other users, including but not limited to removing users from the chat rooms, elevating users hierarchically, and granting users additional permissions. The moderators of a chat room can categorize users of the chat rooms into hierarchical groups with customized labels and can configure those groups to give users in each group different levels of access.

9. The OCE's review of the Service A-1 chat room revealed that the vast majority of its content consisted of discussions about using web cameras and social-media applications to obtain sexually-explicit images and videos of minor children; images and videos of minor children exposing their vaginas, which at times were uploaded to the Service A-1 chat room and its sub-rooms; and links to download child pornography images and videos from external file-storage sites. Most of the children viewed by the OCE appeared to be approximately between the ages of 11 and 17 years old. The Service A-1 page also included some discussion of adults engaging in

sexual activity via web camera. However, the majority of the activity focused on the depiction of minors engaged in sexually explicit activity on web cameras. For example, in the course of a discussion in the one sub-room of Service A-1 regarding the merits of utilizing virtual private network (VPN) technology to mask users' IP address and identity, Username 1 commented on April 15, 2017: "Just the fact that we're all hanging in here, which is a chatroom where underaged sexual content is shared around is enough reason for one to get a VPN." User name 1 continued, stating: "Fuck when you download something from dropfile Your ISP can see what you downloaded What if govt authorities read ISPs logfiles."

10. Based on the OCE's undercover observations on Service A-1, a federal search warrant was issued, on or about July 10, 2017, by the Honorable David R. Strawbridge, United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to Service A-1. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of Service A-1, the content of some text chats occurring on Service A-1, and some private messages sent by users of Service A-1.

11. The Service A-1 chat room was ultimately shut down by Service A. Members of the Service A-1 chat room proceeded to open additional similar chat rooms on Service A, including: Service A-2, Service A-3, Service A-4, and Service A-5. The OCE gained access to Service A-3, Service A-4, and Service A-5. The OCE observed each of these chat rooms contained many of the same users as Service A-1 and were operated for the purpose of discussing, obtaining, and distributing child exploitation material including child pornography files. Service A-5 is the only of the aforementioned Service A chat rooms that is still operating.

12. Based on the OCE's undercover observations on Service A-2, Service A-3, Service A-4, and Service A-5, a second federal search warrant was issued, on or about November 17, 2017,

4

by the Honorable Linda K. Caracappa, Chief United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to the aforementioned chat rooms. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of those chat rooms, the content of certain text chats occurring in the chat rooms, and some private messages sent by users of those chat rooms.

  13. The OCE observed a user of Service A-5 using the online name "Username 10" later identified as Ric CROSSFIELD, Jr.. A review of the search warrant return from Service A and undercover recordings by the OCE revealed among other activity, the following activity, each involving a video or image that I have reviewed and that, in my opinion, constitutes a depiction of a minor engaged in sexually explicit conduct as defined by federal law:

    a. On October 9, 2017, Username 10 posted the following conversation on Service A-5:

     i. "There was a bro and sis or maybe cousins live me that was upped in either [Service A-4] or [Service A-2] where they fucked like off camera I think? Yall know what I'm talking about"

     ii. "Dog rolled up and like humped the dudes leg yeah"

     iii. "i found it"

     iv. "should be up in a bit"

     v. "its all mainly off camera sadly"

Username 10 then posted a link to a file entitled "alright.mp4" on Service A-5. The OCE downloaded and accessed the video entitled "alright.mp4." The video obtained from the link posted by Username 10 depicted what appeared to be one male and one female child between the ages of approximately 12 and 14 years old. The video is 5 minutes and 17

seconds in length. In the beginning of the video it appears the male child is behind the female having sexual intercourse. Throughout the video both children expose their genitals to the camera.

      b.      On October 23, 2017, Username 10 posted the following: "hey yall, i wouldve posted a screen cap but it keeps fucking up on me, if anyone has this video and it works would you mind sending it to me por favor," followed by a link. The OCE utilized the link posted by Username 10 to download the video file. The video depicted 2 minor females between approximately 12 and 15 years old. One of the minor females lowered her underwear, touched her vagina and turned around exposing her vagina and anus to the camera.

      c.      On November 7, 2017, Username 10 posted on Service A-5 a link to a video entitled "celluite_ cindy_.flv," followed by the message: "my last message fucked up but im lookinh got more of this chick." The undercover downloaded and accessed the video entitled "celluite_ cindy_.flv." The video depicted a female child approximately 12 to 14 years old fully naked laying down on her stomach exposing her anus to the camera. The child then turns and faces the camera exposing her genitals and rubs a glue stick on her genitals.

14.      Records from Service A show that user "Username 10" accessed Service A servers using a particular IP address between August 11, 2017 and January 22, 2018. The FBI sent a subpoena to Charter Communications who responded on March 28, 2018. Charter's records showed that the subscriber of that IP address from September 1, 2017 to March 10, 2018 was "Ric

Crossfield,"[3] located at 14845 89th Avenue, Apt 6G, Jamaica, NY 11435.

15.  Records from Service A show that user "Username 10" accessed Service A servers using a different IP address between August 12, 2017 and December 17, 2017. The FBI sent a subpoena to Charter Communications who responded on March 28, 2018. Charter's records showed that the subscriber of that IP address since February 24, 2014 was the Roman Catholic Church, located at 7200 Douglaston Pkwy #2, Little Neck, NY 11362.

16.  Open source database checks for Ric CROSSFIELD, Jr. yielded the Vocations Brooklyn Diocese Facebook page, which identified Ric CROSSFIELD, Jr. as a junior at the Cathedral Seminary House of Formation. The seminary's website identifies its address as 7200 Douglaston Pkwy #2, Little Neck, NY 11362. The following photograph was taken from the above-mentioned Facebook page:



---

[3] A subsequently executed search warrant revealed CROSSFIELD lives with his parents, and his father is also named "Ric Crossfield."

7

17. On July 18, 2018, a federal search warrant was executed at 14845 89th Avenue, Apt 6G, Jamaica, NY 11435, CROSSFIELD, Jr.'s residence. Agents recovered, among other evidence, a laptop computer and an external hard drive belonging to CROSSFIELD, Jr.. On both devices, agents located multiple depictions of minors engaged in sexually explicit conduct, consistent with the type of child pornography distributed by and among members of the child exploitation enterprise active over Service A-1 and similar chat rooms.

18. CROSSFIELD, Jr. was present at the time of the search warrant was executed. CROSSFIELD, Jr. agreed to participate in an interview with law enforcement agents, which was recorded. CROSSFIELD, Jr. admitted to participating in the enterprise as "Username 10." In particular, CROSSFIELD, Jr. admitted distributing child pornography as Username 10 to other members of the enterprise over Service A-5, as well as to downloading child pornography through the enterprise.

## VENUE

19. The child exploitation enterprise in which CROSSFIELD, Jr. engaged, as described above, extended at all relevant times to the Eastern District of Pennsylvania. The enterprise was open to members from anywhere in the world, and the child pornography material disseminated by the enterprise was made available to any person able to access Service A, including from the Eastern District of Pennsylvania. Further, the OCE's activities over the various Service A chat rooms comprising the enterprise were conducted in the Eastern District of Pennsylvania. Finally, the investigation has revealed the participation of at least one member of the enterprise who lived in the Eastern District of Pennsylvania and participated in the enterprise from the Eastern District

of Pennsylvania, from as early as July 2016 until that member's arrest by federal authorities in February 2018.

## CONCLUSION

20. Based upon the information above, I respectfully submit that there is probable cause to believe that Ric CROSSFIELD, Jr. has engaged in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g), in that CROSSFIELD, Jr. has violated Chapter 110 of Title 18 of the United States Code as part of a series of felony violations involving three or more separate incidents and more than one victim, and has committed those offenses with three or more other persons. I therefore further respectfully request that the Court issue the attached complaint and warrant charging CROSSFIELD, Jr. with that offense.

Daniel J. Johns
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 18TH DAY
OF JULY, 2018.

HON. LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE